**Darrow Kierov ERLIN, Plaintiff,**

and

**Barbara Snow–Erlin, Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 00–16986.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Filed April 19, 2004.

---

Margaret Engelhardt (argued), certified law student at University of California School of Law, Davis, California, for the appellant.

Carter C. White (briefed supplemental opening brief), Supervising Attorney, University of California School of Law, Davis, California, for the appellant.

Darrow Kierov Erlin (briefed opening brief), pro per, Oakland, California, appellant.

Jocelyn Burton, Assistant U.S. Attorney, San Francisco, California, for the appellee.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and BEISTLINE,* District Judge.

## OPINION

KLEINFELD, Circuit Judge.

This is a statute of limitations case. The issue is when a cause of action accrued for purposes of the statute of limitations under the Federal Tort Claims Act. The action is for miscalculation of parole, with consequent imprisonment of a person who should have been released.

### Facts

Erlin committed crimes both before and after the Sentencing Reform Act of 1984, and kept committing new ones while still under sentence for the old ones, making computation of his release date complex. He was convicted in 1984 for conspiracy to manufacture and attempt to manufacture methaqualone, in violation of 21 U.S.C. §§ 841 and 846. He was sentenced to three years, on condition that he be confined six months, with the remaining two-and-a-half years suspended, plus five-years probation to commence upon his release.[1] While on probation after his May 1986 release from prison, Erlin was convicted in 1988 of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Erlin to ten years to serve, followed by eight years of supervised release. The ten-year sentence was not subject to parole. In addition, the probation on Erlin's 1984 conviction was revoked, and the remaining two-and-a-half years of imprison-

ment imposed, to be served consecutively with the ten-year sentence.

The Bureau of Prisons aggregated the sentences[2] and treated the combined time as a thirteen-year sentence for the purpose of calculating Erlin's release date. He was released February 17, 1995. His release was pursuant to a statute then in effect providing for mandatory release at the expiration of the term, less time deducted for good conduct, with the prisoner deemed to be on parole thereafter until the expiration of the term to which he was sentenced less 180 days.[3]

Erlin again failed to comply with conditions. He was arrested for driving under the influence on March 19, 1996. On account of his failure to report the arrest, his failure to report his change of address, his excessive use of alcohol, and his driving under the influence, the Parole Commission issued a warrant for his arrest, and he was arrested on this federal warrant on June 28, 1996. His supervised release on the ten-year cocaine term was revoked, and he was sentenced to serve an additional six months in prison. In addition, the Parole Commission revoked his mandatory-release parole and ordered him to serve an additional twenty months of imprisonment consecutively with the six months on his supervised-release revocation.

Erlin filed a timely administrative appeal of the twenty-month sentence that the Parole Commission tacked on. He lost. On January 13, 1997, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court

---

* The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

1. The crime was pre-Sentencing Guidelines, so the sentencing terminology and rules were different from what they are now. The differences have no bearing on this case, so we need not explicate them.

2. Aggregation was under 18 U.S.C. § 4161. That statute has since been repealed. Sentencing is now under the Sentencing Reform Act of 1984, the effective date of which was November 1, 1987. The changes have no bearing on the questions before us.

3. 18 U.S.C. §§ 4163, 4164 (repealed).

for the Central District of California. He prevailed, and the court granted the writ on October 16, 1997. Erlin was released November 7, 1997. The basis for the writ was that Erlin's parole should have been based only on his 1984 three-year sentence, not the aggregated thirteen-year sentence, because parole had been abolished when the ten-year sentence was imposed, so parole had expired and the Parole Commission had no jurisdiction over Erlin when it imposed the additional and consecutive twenty months. The United States did not appeal, and that decision became final. We therefore have no occasion to examine the correctness of the district court's decision that held that Erlin was mistakenly confined too long. Erlin claims that the effect of the determination in his habeas case is that he served 311 days in prison after he should have been released.

On November 1, 1998, slightly less than a year after his November 7, 1997 release, Erlin filed a claim under the Federal Tort Claims Act for damages on account of the error, and he filed suit on November 4, 1998. He claimed that he suffered a stroke while in prison under the mistaken calculation. He died after release, and his widow is pursuing this appeal on behalf of his estate.

The theory of the claim is negligence in miscalculating Erlin's release date, not false imprisonment. The district court dismissed the suit, holding that Erlin's cause of action had accrued on or about May 9, 1996, when the Parole Commission issued the warrant based on the miscalculated parole expiration. Based on that date, the court held that the two-year limitations period on FTCA suits expired before Erlin filed his claim on November 1, 1998. Erlin appeals.

## Analysis

■■■ We review the district court's dismissal on statute-of-limitations grounds de novo.[4] We also review de novo the question of the appropriate accrual date, unless the choice of that date turns in part on what a reasonable person knew or should have known. In that instance, the question is a mixed question of law and fact, which we review for clear error.[5]

The relevant statute of limitations is two years to file a claim, then six months from notice of denial.[6] The six months to file the action in court is not at issue in this appeal, just the two years to file the claim. The issue is when the cause of action accrued.

■■■ Even though the action is for miscalculation of the release date, we conclude that the cause of action did not accrue when the Parole Commission made the miscalculation. The reason is that one more thing had to happen before Erlin had a claim for the miscalculation. He had to prevail in a habeas case establishing that he was entitled to release. So long as he was incarcerated, a judgment for damages for the miscalculation would necessarily imply that he was wrongfully imprisoned. Thus, the cause of action could not accrue until he won a writ of habeas corpus. Erlin filed his claim within two years of the issuance of the writ, so his action was timely.

We so infer from the Supreme Court's reasoning in *Heck v. Humphrey*.[7] That was a § 1983 suit for damages resulting from constitutional torts in the course of a criminal investigation and prosecution.

---

**4.** See *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir.2002).

**5.** See *Bartleson v. United States*, 96 F.3d 1270, 1274 (9th Cir.1996).

**6.** 28 U.S.C. § 2401(b).

**7.** *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Although the lawsuit did not seek release as a remedy, just damages, the Supreme Court held that the cause of action did not accrue when the constitutional torts occurred. The Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.[8]

The Court noted that the somewhat analogous common law tort of malicious prosecution requires favorable termination of the criminal prosecution in favor of the accused, because of the interest in avoiding parallel litigation over common issues such as guilt, the strong judicial policy against the creation of two conflicting resolutions, and the undesirability of collateral attack on the criminal prosecution in a civil suit.[9] In light of these interests, the Court concluded that the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."[10]

■ The *Heck* requirement of favorable termination of the criminal proceeding before a § 1983 action can be brought does "not engraft an exhaustion requirement upon § 1983, but rather den[ies] the existence of a cause of action."[11] Thus, the "statute of limitations poses no difficulty" while other challenges to the conviction or imprisonment are being pursued, "since the § 1983 claim has not yet arisen."[12] The § 1983 cause of action "does not accrue until the conviction or sentence has been invalidated."[13]

It is clear enough that *Heck* is distinguishable from the case at bar. Erlin does not challenge the validity of his convictions or the sentences imposed upon those convictions, and the invalidity of his convictions or sentences is not necessary to his damages claim. But this is a distinction without a difference. Erlin's claim for damages was for the miscalculation of his required term of imprisonment under his valid sentences. A judgment that the term had been miscalculated, issued while he was still imprisoned, would raise the same problems that led the Court to hold in *Heck* that no § 1983 cause of action had accrued.

Another distinction between this case and *Heck* is the federal statute under which the plaintiff sues. *Heck* involved a § 1983 action. Here, the Federal Tort Claims Act supplies the statutory basis for the suit. This distinction also makes no difference, under the ratio decidendi of *Heck*. Just as a successful § 1983 action would have impugned the validity of the conviction in *Heck*, so too would a successful suit under the FTCA have impugned the validity of Erlin's continuing imprisonment. A successful FTCA suit might even have had preclusive effect, so that Erlin could have forced his release from prison without a habeas petition.[14] Therefore, the same need to restrict when a claim accrues arises in an FTCA suit as in a § 1983 suit.

8. *Id.* at 486–87, 114 S.Ct. 2364 (footnote omitted).

9. *Id.* at 484, 114 S.Ct. 2364.

10. *Id.* at 486, 114 S.Ct. 2364.

11. *Id.* at 489, 114 S.Ct. 2364.

12. *Id.*

13. *Id.* at 490, 114 S.Ct. 2364.

14. The Supreme Court recognized this possibility in *Heck*. "[W]ithout implying the nonexistence of" the issue, it declined to rest its

■ Notwithstanding the similarity of the interests at stake in the two types of suits, the distinction between § 1983 suits and FTCA suits is arguably more material than the distinction between suits challenging the underlying conviction and suits challenging miscalculations of sentences. In § 1983 suits, the underlying cause of action is federal. Because a federal statute provides the underlying cause of action, the Supreme Court was able to hold, as a matter of federal law, that the cause of action simply does not become cognizable until and unless the conviction or imprisonment is deemed improper. In the Supreme Court's words, it was "deny[ing] the existence of a cause of action" until the conviction or sentence has been invalidated.[15] In contrast, where the underlying cause of action comes from state law, as in an FTCA claim,[16] a federal court is not free to append such a rule of cognizability directly onto the underlying cause of action. What is cognizable under a given cause of action is a matter of state, not federal, tort law.

Nevertheless, the time of accrual of an FTCA claim is subject to the federal law set out in *Heck*. The interests the Supreme Court identified in *Heck* require us to impose the same restriction on FTCA claims that *Heck* imposed on § 1983 actions.

Though the underlying cause of action might otherwise have accrued earlier under state law, where the litigation would potentially force release of a prisoner, *Heck* imposes an additional requirement. This approach is consistent with the general structure of the FTCA, which incorporates state-law torts while also adding restrictions of its own on how those torts are to apply in suits against the United States.[17] Both *Heck* and this case require interpretation of federal statutes. Just as the Supreme Court read § 1983 as containing a restriction on when a litigant can bring a suit that impugns the validity of a conviction or imprisonment, we read the FTCA as containing the very same restriction. And we do so for the same reasons.

■ The distinction between FTCA and § 1983 suits suggests at least as much of a need to impose a restriction on FTCA actions as on § 1983 actions. Whereas § 1983 actions by definition involve challenges to state actors based on federal law, FTCA actions involve challenges to the actions of federal actors based on state law. The states, of course, "have no power ... to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government."[18] Thus, state law

holding on the possibility of preclusion, noting that the preclusive effect of a judgment depends on state law. *Id.* at 480 n. 2, 114 S.Ct. 2364. We likewise offer preclusion here merely as an illustration of how an FTCA suit might interfere with the underlying conviction or imprisonment, and our analysis does not depend on whether a successful FTCA suit would have preclusive effect.

**15.** *Id.* at 489, 114 S.Ct. 2364.

**16.** *See Molzof v. United States,* 502 U.S. 301, 305, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.").

**17.** *Compare, e.g., Will v. United States,* 60 F.3d 656, 659 (9th Cir.1995) (per curiam) (interpreting the FTCA to determine whether the United States could be sued for an independent contractor's actions), *with id.* at 659–60 (analyzing the elements of state negligence law to determine the government's liability under the FTCA, because "[i]ts liability is determined under the law of the state where the act or omission occurred").

**18.** *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819).

cannot control accrual of an FTCA action that affects the detention of prisoners by federal authorities, before that detention is otherwise deemed invalid.

█ We thus hold that a civil action under the Federal Tort Claims Act for negligently calculating a prisoner's release date, or otherwise wrongfully imprisoning the prisoner, does not accrue until the prisoner has established, in a direct or collateral attack on his imprisonment, that he is entitled to release from custody.[19]

Because Erlin brought his successful habeas attack while he was an inmate and was released on account of that attack, we do not have occasion to decide whether the same result would apply if the subsequent tort action were brought after the prisoner had been released, without any such attack.

The government urges that Erlin's imprisonment was not a continuing tort, but rather involved only continuing damages from the completed tort of negligent miscalculation. The argument is immaterial because the applicability of the *Heck* rationale means that the cause of action had not yet accrued when Erlin's parole was miscalculated. Likewise, the government's argument that Erlin had reason to know of the miscalculation when he was arrested is immaterial. It does not matter whether he knew of the government's negligent miscalculation at that time, because a suit for negligence was not available to him until he had successfully challenged his confinement through his petition for a writ of habeas corpus.

The government argues that *Heck* should be distinguished because Erlin's claim is for false imprisonment, not malicious prosecution. But in fact it is not for false imprisonment. It is for negligence. While *Heck* did distinguish between false imprisonment and malicious prosecution in seeking a tort that was analogous to a § 1983 challenge to a conviction, and while it did draw on the elements of malicious prosecution rather than false imprisonment in aid of its reasoning,[20] we have no occasion to decide here whether *Heck* would also delay the accrual of a false imprisonment claim under the FTCA.

Finally, the government's citations to cases not involving criminal conviction or confinement, including *Davis v. United States*[21] and *Dyniewicz v. United States*,[22] do not undermine our conclusion. The *Heck* problem arises specifically and particularly in the context of convictions and sentencing in criminal cases.

Erlin's cause of action for negligent miscalculation of his release date did not accrue until he succeeded in challenging his continued imprisonment through his petition for a writ of habeas corpus. He filed his claim within two years of that date, so

---

**19.** We also so held in *Alvarez–Machain v. United States*, 107 F.3d 696, 700–01 (9th Cir. 1997). This opinion in *Alvarez–Machain* led to a petition for certiorari, which the Supreme Court denied. *Berellez v. Alvarez–Machain*, 522 U.S. 814, 118 S.Ct. 60, 139 L.Ed.2d 23 (1997). The mandate issued and the case was remanded. After remand, the case returned to us. Following a panel opinion, we reheard the case en banc and issued an opinion. *Alvarez–Machain v. United States*, 331 F.3d 604 (9th Cir.2001) (en banc). The Supreme Court then granted certiorari. *Sosa v. Alvarez–Machain*, —— U.S. ——, 124

S.Ct. 807, 157 L.Ed.2d 692 (2003); —— U.S. ——, 124 S.Ct. 821, 157 L.Ed.2d 692 (2003). Neither our subsequent opinions nor the questions on which the Supreme Court granted certiorari address the statute-of-limitations issue.

**20.** *See Heck*, 512 U.S. at 484, 114 S.Ct. 2364.

**21.** *Davis v. United States*, 642 F.2d 328 (9th Cir.1981).

**22.** *Dyniewicz v. United States*, 742 F.2d 484 (9th Cir.1984).

the statute of limitations did not operate as a bar.

REVERSED.